IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **ROBERT KENNETH HUDNALL,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-15-CV-364-KC |
| | § | |
| **STATE BAR OF GEORGIA,** | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant's Brief Concerning Jurisdiction in Response to Court Order and Motion to Dismiss Pursuant to Rule 12(b)(2) ("Motion to Dismiss"), ECF No. 9, and Plaintiff's Motion for Declaratory Judgment, ECF No. 11. For the following reasons, the Motion to Dismiss is **GRANTED**, and the Motion for Declaratory Judgment is **DENIED** as moot.

### I.   BACKGROUND

This case has its origin in disciplinary proceedings that culminated in the Supreme Court of Georgia's decision, in 1989, to accept Plaintiff's application for voluntary surrender of his license to practice law in the State of Georgia. *See In re Hudnall*, 259 Ga. 247 (1989); Am. Pet. 5, 19, Notice of Removal Ex. No. 1, ECF No. 1-1.[1] The Supreme Court of Georgia stated that Plaintiff had "petitioned for voluntary surrender of his license to practice law in the State of Georgia," and upon accepting Plaintiff's application, noted that Plaintiff was effectively disbarred in Georgia. *See In re Hudnall*, 259 Ga. at 247. According to Defendant, the disciplinary proceedings against Plaintiff were "conducted pursuant to the Rules and Regulations for the Organization and Government of the State Bar of Georgia," and were "undertaken as part of the disciplinary process set forth by the Supreme

---

[1] For clarity in citing to the Amended Petition, the Court cites to the page numbers provided by the Court's electronic docketing system.

Court of Georgia in the Georgia Rules of Professional Conduct." Aff. of Paula J. Frederick ("Frederick Aff.") 3, Mot. to Dismiss Ex. No. 2, ECF No. 9-2.[2]

According to Plaintiff, a citizen of Texas, a document entitled "Petition for Voluntary Surrender of License" ("Petition for Voluntary Surrender"), which the Supreme Court of Georgia relied upon in accepting Plaintiff's application for surrender of his license, contains a forgery of his signature. *See, e.g.*, Am. Pet. 4-5, 8-9. The Petition for Voluntary Surrender, filed in the Supreme Court of Georgia on February 9, 1989, states: "Robert K. Hudnall, Respondent in the above-captioned matters, and pursuant to Bar Rule 4-212(d) files . . . his Petition for Voluntary Surrender of License with the Special Master for the State Bar of Georgia, after the issuance of Formal Complaints . . . ." *See* Pet. for Voluntary Surrender 49, 88, Notice of Removal Ex. No. 1, ECF No. 1-1.[3] The Petition recounts a series of wrongdoings Plaintiff committed in violation of State Bar of Georgia Rules, and concludes by stating: "[Plaintiff] respectfully submits that the appropriate discipline to be imposed under the circumstances is to accept [Plaintiff]'s Petition for Voluntary Surrender of License," and that Plaintiff "prays that this Petition for Voluntary Surrender of License be accepted by the Special Master, Review Panel and Supreme Court of Georgia." *Id*. at 88. Although the Petition for Voluntary Surrender is dated January 30, 1989, and signed by "Robert K. Hudnall, Respondent," Plaintiff maintains that this signature is not his, and that he never signed the Petition for Voluntary Surrender. *See id.*; *see, e.g.*, Am. Pet. 4-5.

Plaintiff alleges that for over twenty-five years, Defendant "has stalked him across the country causing him to be terminated from numerous positions and denied the opportunity for entry into other Bars." Am. Pet. 37. According to Plaintiff, at some point, Defendant distributed the

---

[2] When deciding a motion to dismiss for lack of personal jurisdiction, the Court is not limited to considering the allegations in the complaint, but may also consider contents of the record. *See Hazim v. Schiel & Denver Book Publishers*, No. 15-20586, 2016 WL 2609772, at *1 (5th Cir. May 5, 2016).

[3] For clarity in citing to the Petition for Voluntary Surrender, the Court cites to the page numbers provided by the Court's electronic docketing system.

2

Petition for Voluntary Surrender to the United States Attorney in El Paso, Texas, and to the Assistant Attorney General of Texas. *See, e.g.*, *id.* at 40. The Petition for Voluntary Surrender, according to Plaintiff, was "the reason he was denied a federal position since it was the opinion of the Assistant U.S. Attorney in El Paso that due to this alleged confession[,] Plaintiff could not pass a background check." *Id.* at 43.

Defendant states that the Petition for Voluntary Surrender "is a public document that is part of the record in [Plaintiff's] disciplinary case at the Supreme Court of Georgia." Frederick Aff. 2. Further, "[a]ny individual or entity could obtain the record by requesting it from the Clerk of the Supreme Court [of Georgia]." *Id.* Defendant states that it "does not, on its own volition, send disciplinary information about any member or former member to anyone." [4] *Id.* Instead, Defendant "provide[s] information in response to requests from individuals or entities." *Id.* Defendant usually receives such requests when a member or former member of the State Bar of Georgia seeks admission to the bar of another state, or has applied for a position which requires the member or former member "to provide a disciplinary history." *Id.* In the event Defendant were to receive a request regarding Plaintiff, Defendant "would provide a copy of the Order accepting Plaintiff's voluntary surrender of license," and would also provide the Petition for Voluntary Surrender if a requesting party asked for the document. *Id.* at 2-3.

On October 8, 2015, Plaintiff filed his Amended Petition in the 171st District Court of El Paso County, Texas. *See* Am. Pet. 3. Through his Amended Petition, Plaintiff brought three causes of action against Defendant State Bar of Georgia, including defamation, stalking, and denial of rights under color of law. *See id.* at 39-45. Defendant removed the case to this Court on December 3, 2015, on the basis of federal question and diversity jurisdiction. *See* Notice of Removal, ECF No. 1;

---

[4] The only exception, not relevant here, is when a member of the State Bar of Georgia who is being investigated is also a member of another state's bar, in which case Defendant "would notify the sister state so that it could do a reciprocal discipline case." Frederick Aff. 2 n.1.

*see also* Mot. to Dismiss 9 (stating that the Court has jurisdiction over Plaintiff's state law claims for stalking based on diversity jurisdiction). Defendant filed its Motion to Dismiss on February 29, 2016, alleging, among other things, that the Court lacks personal jurisdiction over Defendant. *See* Mot. to Dismiss. Plaintiff filed his Motion for Declaratory Judgment on March 15, 2016. *See* Mot. for Decl. J.

## II. DISCUSSION

### A. Standard

A district court may exercise personal jurisdiction over a nonresident defendant if: "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Because Texas's long-arm statute extends to the limits of due process, the Court's inquiry is limited to whether exercising personal jurisdiction over the defendant offends due process. *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012) (citations omitted); *Clemens*, 615 F.3d at 378; *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

A court's exercise of personal jurisdiction over a nonresident defendant comports with due process requirements when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Clemens*, 615 F.3d at 378. Two types of contacts may satisfy the "minimum contacts" requirement: contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction. *Id*. Specific jurisdiction arises when the defendant has "purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out

of or relate to those activities." *Id*. at 379 (internal quotation marks omitted) (alteration in original) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  In contrast, general jurisdiction exists "only where a defendant maintains 'continuous and systematic' contacts with the forum state." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013) (quoting *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)).

The plaintiff bears the burden of establishing that the court may exercise personal jurisdiction over the nonresident defendant.  *Clemens*, 615 F.3d at 378.  If the court rules on personal jurisdiction without holding an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction.  *Hazim v. Schiel & Denver Book Publishers*, No. 15-20586, 2016 WL 2609772, at *1 (5th Cir. May 5, 2016) (citation omitted).  The court "must accept the plaintiff's uncontroverted allegations as true, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Clemens*, 615 F.3d at 378 (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).  Further, the court "is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made," but may also "consider the contents of the record at the time of the motion." *Hazim*, 2016 WL 2609772, at *1 (citation omitted).

### B. Personal Jurisdiction

Defendant argues that the Court should dismiss Plaintiff's case because the Court lacks personal jurisdiction over Defendant.  *See* Mot. to Dismiss 6-8.  Specifically, Defendant asserts that it does not have sufficient minimum contacts with Texas, and that the Court's exercise of personal jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.  *See id*. at 7, 11-14.  With respect to the first requirement—that Defendant has sufficient minimum contacts with Texas—Plaintiff does not assert that Defendant has minimum contacts giving rise to

general jurisdiction, but instead appears to argue that the Court may exercise specific jurisdiction over Defendant. *See* Resp. 8-10, ECF No. 12. Thus, the Court addresses whether Defendant has established minimum contacts giving rise to specific jurisdiction only.

### 1. Specific Jurisdiction

According to Defendant, the Court lacks jurisdiction over Defendant because its only contact with Texas is its act of providing a publicly available document to government officials in Texas who requested the document. Mot. to Dismiss 12. This contact, Defendant argues, "is the very definition of 'random, isolated, or fortuitous.'" *Id*. Moreover, Defendant asserts that "as an arm of the Georgia Supreme Court tasked with regulating the legal profession in Georgia, [it] sought no 'benefit, advantage, or profit'" when it provided the Petition for Voluntary Surrender to officials in Texas who requested the document. *Id*. Defendant also notes that it has no offices in Texas, conducts no business in Texas, and has contact with Texas only when a person or entity requests information from Defendant. *Id*. Defendant argues that as a result, it "could not reasonably anticipate being sued in Texas based on its conduct." *Id*.

For the Court to exercise personal jurisdiction over a nonresident defendant, the nonresident defendant must have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (alteration in original) (citation omitted). Thus, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, --- U.S. ----, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citations omitted)). For a court to exercise specific jurisdiction, "[f]irst, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id*. at 1122 (quoting *Burger King*, 471 U.S. at 475). Such "contacts must

have been *purposefully established* by the defendant." *Pervasive Software*, 688 F.3d at 227 (citation omitted); *see Christian Tours, Inc. v. Homeric Tours, Inc.*, 239 F.3d 366, 2000 WL 1741614, at *1 (5th Cir. Nov. 13, 2000). And, "[a] court does not acquire jurisdiction over a defendant as the result of unilateral activities by another person." *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 918 (5th Cir. 1987). Requiring that the defendant himself create the contacts with the forum state "ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted) (quoting *Keeton*, 465 U.S. at 774; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).

Second, the court examines "the defendant's contacts with the forum State itself," and not merely "the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122 (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)); *see Walden*, 134 S. Ct. at 1124 (explaining that in *Calder v. Jones*, 465 U.S. 783 (1984), the Court "examined the various contacts the defendants had created with [the forum state] (and not just with the plaintiff)"). Thus, the Supreme Court has upheld a court's exercise of specific jurisdiction where defendants "have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State, . . . or by circulating magazines to 'deliberately exploi[t]' a market in the forum State[.]" *Walden*, 134 S. Ct. at 1122 (first and third alterations in original) (citations omitted).

However, a nonresident defendant's "relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 1123. Instead, "the defendant's conduct . . . must form the necessary connection with the forum State," and must "connect[] him to the forum in a

meaningful way." *Id*. at 1122, 1125.  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Id*. at 1123 (quoting *Burger King*, 471 U.S. at 475).  Additionally, while "physical presence in the forum is not a prerequisite to jurisdiction, . . . physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."  *Id*. at 1122 (citations omitted).

Although even "a single act directed at the forum" may give rise to specific jurisdiction, *Herman*, 730 F.3d at 464 (quoting *Bullion*, 895 F.2d at 216), it is nonetheless imperative "that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws," *Clemens*, 615 F.3d at 379 (citing *Hanson*, 357 U.S. at 253).  Courts reason that when a nonresident defendant's purposefully directed "activities are shielded by the benefits and protections of the forum's laws[,] it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."  *El Paso Healthcare Sys., Ltd. v. Molina Healthcare of N.M, Inc.*, Civil Action No. 3:09-CV-54-KC, 2009 WL 1743221, at *4 (W.D. Tex. May 1, 2009) (quoting *Burger King*, 471 U.S. at 474); *see Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999) (noting that in determining whether defendant purposefully availed himself of the privilege of conducting activities in forum state, court must consider "whether the defendant benefitted from those contacts in a way that made jurisdiction foreseeable," even if "defendant's contacts with the forum are deemed voluntary").

In this case, Defendant's only relevant contacts with Texas, from which Plaintiff's causes of action arise, are Defendant's sending the Petition for Voluntary Surrender to the United States

Attorney in El Paso, Texas, and to the Assistant Attorney General of Texas. *See* Am. Pet. 38. Thus, the Court must discern whether Defendant's sending the Petition for Voluntary Surrender to these two individuals constituted Defendant's purposeful availment such that Defendant could have reasonably anticipated being haled into a Texas court as a result of these acts. *See Herman*, 730 F.3d at 464 (quoting *Clemens*, 615 F.3d at 379).

Plaintiff has not met his burden of establishing that the Court may exercise personal jurisdiction over Defendant. Plaintiff has failed to make a prima facie showing that Defendant has minimum contacts with Texas giving rise to specific jurisdiction. First, it is relevant to the Court's inquiry that, although Defendant sent the Petition for Voluntary Surrender inside Texas to the United States Attorney in El Paso and the Assistant Attorney General of Texas, Defendant did not "purposefully" initiate these contacts with Texas. *See Walton*, 314 S. Ct. at 1122. Defendant presented evidence establishing that it sends the Petition for Voluntary Surrender, which is a public document, only to individuals or entities that request it. *See* Frederick Aff. 2-3. Defendant, therefore, only sent the Petition for Voluntary Surrender to the United States Attorney in El Paso and the Assistant Attorney General of Texas because these individuals requested the document. *See id.*; Mot. to Dismiss 11-12. Plaintiff does not dispute this evidence, and does not argue that Defendant sent the Petition for Voluntary Surrender on its own initiative. *See* Resp. ¶ 23 (stating only that if the potential employers did request the document, "[P]laintiff is entitled to see the written request on official stationary [sic]"). For this reason, Defendant's contacts, which arose only in response to a request by third persons located in Texas, do not constitute purposeful availment. *See Rodi v. S. New England Sch. of Law*, 255 F. Supp. 2d 346, 350-51 (D. N.J. 2003) (finding no purposeful availment where Plaintiff relied on two correspondences Defendant mailed into forum state in response to Plaintiff's actions, including sending request for information to Defendant); *Christian Tours*, 2000

WL 1741614, at *1; *see also Thomas v. Kadish*, 748 F.2d 276, 282-83 (5th Cir. 1984) (noting that basing personal jurisdiction upon letter, not claimed by plaintiff to be defamatory, and written by one defendant "in response to a request from the Texas state bar initiated by [plaintiff] himself," was insufficient to establish minimum contacts for plaintiff's claim that defendants conspired to create record against him).

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *See Walden*, 134 S. Ct. at 1123 (quoting *Burger King*, 471 U.S. at 475). Here, Defendant could not reasonably expect to be haled into court in any state in which it sends a public document, based on the mere fortuity that the requesting party is located in that state. *See id.* To do so would be to allow a court to exercise personal jurisdiction over Defendant in any forum where Plaintiff happens to seek employment.

Plaintiff relies upon Defendant's sending of the Petition for Voluntary Surrender to two individuals inside Texas; however, these acts constitute two isolated contacts with individuals inside Texas resulting from Defendant's adherence to a routine request for a publicly available document. *See* Frederick Aff. 1-2. Defendant's contacts are significantly more limited in scope than the contacts of "defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State, . . . or by circulating magazines to 'deliberately exploi[t]' a market in the forum State[.]" *Walden*, 134 S. Ct. at 1122 (first and third alterations in original) (citations omitted). Defendant's contacts with Texas—forwarding a public document in response to a standard request from two employers considering hiring a former member of the Georgia Bar—are too attenuated for Defendant to have had "fair warning" that it would be subject "to the jurisdiction of a

foreign sovereign." *See Burger King*, 471 U.S. at 472.  Thus, Defendant's acts do not establish sufficient contact with Texas because Defendant's conduct does not "connect[ it] to the forum in a meaningful way."  *See id*. at 1125.

Furthermore, Defendant argues that sending the Petition for Voluntary Surrender to two individuals in Texas is not an invocation of the benefits and protections of the laws of Texas, and that it sought no "benefit, advantage, or profit" by forwarding the document.  *See* Mot. to Dismiss 12.  The Court finds this argument persuasive:  when a state bar reactively sends out requested notices in a ministerial fashion, it does not appear to be acting purposefully, nor is it seeking any benefits or protections from this forum state.

Moreover, this is not the first time that Plaintiff has litigated this issue.  In 1994, Plaintiff sued Defendant in New Mexico, alleging that Defendant "interfered with his admission into the Bar of New Mexico and thus availed itself of the legal system of th[e] State."  Mem. Op. at 1, 4, *Hudnall v. State Bar of Ga.*, Civ. No. 94-409-HB (D. N.M. Dec. 5, 1994), ECF No. 86.  The District of New Mexico dismissed the case against Defendant for lack of personal jurisdiction, explaining that Plaintiff had "not shown any act by which Defendant State Bar of Georgia purposefully availed itself of the privilege of conducting activities within th[e] State."  *Id*. at 5.  Likewise, in the instant case, Plaintiff has not met his burden of demonstrating that there are acts by which Defendant "purposefully avail[ed itself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws."  *See Clemens*, 615 F.3d at 378; *cf*. *Burger King*, 471 U.S. at 478-80 (holding that nonresident defendant franchisees had purposefully availed themselves of benefits and protections of forum state's law, by entering into "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in [forum

state]"). The Court concludes that Defendant has not invoked the benefits and protections of the laws of Texas.

Plaintiff relies exclusively on *Calder v. Jones*, 465 U.S. 783 (1984), as a basis for the Court's exercise of personal jurisdiction over Defendant. *See* Resp. 7-10. According to Plaintiff, Defendant aimed its tortious conduct at him, knowing the brunt of Plaintiff's injury would be felt in Texas, as Plaintiff is a Texas resident. *See id*. In *Calder*, a California plaintiff brought a libel suit in a California state court against a reporter and editor who worked for the National Enquirer. *Calder*, 465 U.S. at 784-85. The plaintiff's claims were based on an article the defendants wrote and edited in Florida for publication in the National Enquirer. *See id*. The National Enquirer, a national weekly newspaper, was headquartered in Florida, but circulated approximately 600,000 copies in California. *See id*. at 785.

> The Court found the defendants' contacts with the forum state were "ample":
>
> The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State . . . . [T]he reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff.

*Walden*, 134 S. Ct. at 1123-25.

As the Supreme Court recently explained, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 134 S. Ct. at 1125. Moreover, even if the plaintiff suffered harm in the forum state and the defendant was aware of the likelihood of such damage in the forum state, the Fifth Circuit has held that under *Calder*, specific jurisdiction does not exist in a defamation case unless the plaintiff shows "the subject matter of and . . . the sources relied upon for the article were in the forum state." *See Clemens*, 615 F.3d at 379-80 (quoting *Revell*, 317 F.3d at 426). Thus, "[t]o support personal jurisdiction against the defaming defendant," *Calder*

requires that the forum state be the "focal point" of the defamatory content. *Id.* at 379 (quoting *Calder*, 465 U.S. at 788-89); *see Herman*, 730 F.3d at 465 ("A plaintiff's suffering damage in the forum state is part of the calculus, but for minimum contacts to be present the allegedly defamatory statements must be adequately directed at the forum state.").

*Calder* does not support this Court's exercise of personal jurisdiction over Defendant. First, the fact that Plaintiff was injured in Texas is insufficient on its own to establish Defendant's minimum contacts with Texas. *See Walden*, 134 S. Ct. at 1125. Second, Plaintiff fails to establish, let alone argue, that Texas is the "focal point" of the defamatory content. *See generally* Resp. Instead, the subject matter of the Petition for Voluntary Surrender centers on Plaintiff's conduct in Georgia while he was a member of the State Bar of Georgia. *See, e.g.*, Pet. for Voluntary Surrender 50-55, 59-74, 77-78. The subject matter "did not concern activity in Texas; nor [was it] made in Texas or directed to Texas residents any more than residents of any other state." *See Clemens*, 615 F.3d at 380. Thus, the focal point of the allegedly defamatory content is Georgia, not Texas. *See id.*; *Revell*, 317 F.3d at 473 (finding Texas was not focal point of defamatory statement sufficient to establish minimum contacts under *Calder* because article contained "no reference to Texas," did not "refer to the Texas activities of [plaintiff]," and "was not directed at Texas readers as distinguished from readers in other states"). Because Plaintiff fails to establish sufficient contacts between Defendant and Texas, *Calder* does not support this Court's exercise of personal jurisdiction over Defendant, even if Plaintiff suffered harm in Texas and Defendant was aware of the likelihood of such damage in Texas. *See Clemens*, 615 F.3d at 379-80; *Revell*, 317 F.3d at 473.

Accepting Plaintiff's uncontroverted allegations as true, and resolving in his favor any conflicts between facts in the record, Plaintiff has failed to meet his burden of making a prima facie case of personal jurisdiction. *See Hazim*, 2016 WL 2609772, at *1; *Clemens*, 615 F.3d at 378.

Because Defendant did not "purposefully avail[] himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state," the Court need not decide whether exercising jurisdiction over Defendant offends traditional notions of fair play and substantial justice. *See Clemens*, 615 F.3d at 378. The Court may not exercise specific jurisdiction over Defendant because Defendant has not established the requisite minimum contacts, and exercising personal jurisdiction over Defendant would therefore offend due process. *See Pervasive Software*, 688 F.3d at 220; *Clemens*, 615 F.3d at 379. Accordingly, Plaintiff's claims against Defendant must be dismissed.

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss, ECF No. 9, is **GRANTED**, and the case is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Declaratory Judgment, ECF No. 11, is **DENIED** as moot.

**SO ORDERED.**

**SIGNED this 18th day of June, 2016.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE